Michael H. Steinberg (SBN 134179)
steinbergm@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone: (310) 712-6600
Facsimile: (310) 712-8800

Sverker K. Hogberg (SBN 244640)
hogbergs@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1870 Embarcadero Road
Palo Alto, California 94303
Telephone: (650) 461-5600
Facsimile: (650) 461-5700

*Attorneys for Defendant FCA US LLC
and VM North America, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM R. DEEN, KENT JENKINS, HENISH PULICKAL, DONALD GILDEN, JOYCE GILDEN,<br><br>           Plaintiffs,<br><br>     v.<br><br>FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., VM MOTORI S.p.A., VM NORTH AMERICA, INC., ROBERT BOSCH GmbH, ROBERT BOSCH, LLC, NEW GENERATIONS AUTO, ELK GROVE AUTO MALL, CARMAX AUTO SUPERSTORES CALIFORNIA, BOB BAKER AUTOMOTIVE,<br><br>           Defendants. | Case No. **'19 CV 1992 W    RBB**<br><br>**NOTICE OF REMOVAL BY DEFENDANTS FCA US LLC AND VM NORTH AMERICA, INC. PURSUANT TO 28 U.S.C. §§ 1331, 1441 AND 1446** |

PLEASE TAKE NOTICE that Defendants FCA US LLC ("FCA") and VM North America, Inc. (collectively, "Defendants"), through their undersigned counsel, hereby remove this action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California. This removal is made pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. The grounds for removal are as follows:

## STATEMENT OF JURISDICTION

1. This is a civil action for which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 for the reasons below.

## THE REMOVED ACTION

2. This civil action was filed on August 27, 2019 in the Superior Court of the State of California, County of San Diego, a court located within this District, under Case Number 37-2019-00045236.

3. FCA US LLC was served with the Summons and Complaint on or about September 12, 2019. (*See* Ex. A.) VM North America, Inc. was served with the Summons and Complaint on or about September 13, 2019. (*See* Ex. A.) Defendants filed an Answer to the Complaint in San Diego County Superior Court, along with defendants CarMax Auto Superstores California, LLC and Bob Baker Automotive, Inc., on October 15, 2019, prior to removal. Defendant Robert Bosch LLC filed its Answer in San Diego County Superior Court on October 11, 2019. Defendant Elk Grove Auto Mall Owners, Inc. filed its Answer in San Diego County Superior Court on October 4, 2019. Defendants are not aware of any further proceedings regarding this action in the San Diego County Superior Court. This Notice of Removal is accompanied by the following documents:

- All executed process on Defendants in this case (Ex. A);
- All pleadings asserting causes of action (*i.e.*, the Complaint) (Ex. B);

SULLIVAN & CROMWELL LLP

- Elk Grove Auto Mall Owners, Inc.'s Answer to the Complaint (Ex. C)
- Robert Bosch, LLC's Answer to the Complaint (Ex. D);
- Defendants' Answer to the Complaint (Ex. E); and
- The docket sheet (Ex. F);

4.     Other than the documents attached as Exhibits, no pleadings, process, orders or other documents in the San Diego County Superior Court have been served or otherwise received by Defendants.  If such filings come to Defendants' attention, Defendants will file copies in this Court.

5.     The Complaint asserts claims on behalf of five individuals who purchased or leased 2014-2016 Jeep Grand Cherokee diesel vehicles (the "Vehicles").  (Compl. ¶¶ 1-2.)  The Complaint is based on allegations concerning Notices of Violation, dated January 12, 2017 (the "NOVs"), issued by the U.S. Environmental Protection Agency (the "EPA") and the California Air Resources Board ("CARB").  The NOVs alleged that certain Auxiliary Emissions Control Devices ("AECDs") were present in the Vehicles and had not been disclosed to the EPA and CARB as part of the vehicle certification process, that these AECDs resulted in the emission of excess nitrogen oxides ("NOx"), and that these AECDs may have constituted "defeat devices" under federal law.  (*See* Compl. ¶ 3 ("On January 12, 2017, the EPA issued a Notice of Violation ('NOV') against Fiat and FCA for failing 'to disclose [eight] Auxiliary Emission Control Devices (AECDs)' in the 2014-2016 FCA Ram 1500s and Jeep Grand Cherokees.  The same day, CARB publicly announced that it, too, had notified Fiat and FCA of its violations."), *id.* ¶ 6 (alleging that "FCA secretly programmed its EcoDiesel® vehicles with hidden software features that significantly reduced the effectiveness of the NOx reduction technology during real-world driving conditions").)

6.     The Judicial Panel on Multidistrict Litigation has consolidated over 40 cases making similar claims in a multi-district litigation ("MDL") in the

SULLIVAN & CROMWELL LLP

United States District Court for the Northern District of California. *See In re:*
*Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability*
*Litigation*, Case No. 3:15-md-02777-EMC (N.D. Cal.) (Chen, J.). Following
removal, Defendants intend to "tag" this case to the MDL in the Northern District of
California for coordinated pre-trial proceedings before Judge Chen.

**PROCEDURAL ISSUES**

7. Removal is timely under 28 U.S.C. § 1446(b). FCA US LLC
was served with the Summons and Complaint on or about September 12, 2019, and
VM North America, Inc. was served with the Summons and Complaint on or about
September 17, 2019. (*See* Ex. A.) 30 days from service on FCA US LLC fell on
October 12, a Saturday. The next Monday, October 14, 2019 was Columbus Day,
a legal holiday. Thus, the 30-day period for filing this notice of removal for FCA
US LLC "continues to run until the end of the next day that is not a Saturday,
Sunday, or legal holiday," Fed. R. Civ. P. 6(a)(1)(C), which is October 15, 2019.
The 30-day period for filing this notice of removal for VM North America, Inc.
runs until October 17, 2019.

8. Venue is proper under 28 U.S.C. § 1441(a) because this Court is
the United States District Court for the district and division where the state court
case was pending. The Superior Court of the State of California for the County of
San Diego is located within the Southern District of California.

**JURISDICTION IS PROPER UNDER 28 U.S.C. § 1331**

9. The Court has jurisdiction over this action pursuant to 28 U.S.C.
§ 1331, which gives district courts "original jurisdiction of all civil actions arising
under the Constitution, laws, or treaties of the United States."

10. Although a complaint may be styled as arising under state law,
federal courts look to whether the claim raises "a substantial question of federal law"
to determine whether federal jurisdiction exists. *See Franchise Tax Bd. of Cal.* v.
*Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)

SULLIVAN & CROMWELL LLP

("Congress has given the lower federal courts jurisdiction to hear, originally or by

2 removal from a state court . . . cases in which . . . the plaintiff's right to relief

3 necessarily depends on resolution of a substantial question of federal law.").

4        11.   "The Supreme Court has long emphasized the "commonsense

5 notion that a federal court ought to be able to hear claims recognized under state law

6 that nonetheless turn on substantial questions of federal law, and thus justify resort

7 to the experience, solicitude, and hope of uniformity that a federal forum offers on

8 federal issues." *Grable & Sons Metal Prods.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308,

9 312 (2005); *see also City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 164

10 (1997) ("Even though state law creates [a party's] causes of action, its case might

11 still 'arise under' the laws of the United States" if the "right to relief under state law

12 requires resolution of a substantial question of federal law." (*quoting Franchise Tax*

13 *Bd. of Cal.*, 463 U.S. at 13).

14        12.   "[F]ederal jurisdiction over a state law claim will lie if a federal

15 issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable

16 of resolution in federal court without disrupting the federal-state balance approved

17 by Congress." *Gunn* v. *Minton*, 133 S. Ct. 1059, 1065 (2013).

18        13.   Plaintiffs' Complaint meets that standard. As the Supreme

19 Court recently reaffirmed, federal question jurisdiction is warranted when "a suit

20 raising a state-law claim rises or falls on the plaintiff's ability to prove the

21 violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v.

22 *Manning*, 136 S. Ct. 1562, 1569 (2016). Here, Plaintiffs' claims rise and fall on

23 the uniquely federal questions of whether the Vehicles contain a "defeat device"—

24 a term defined exclusively by federal regulations enacted pursuant to the federal

25 Clean Air Act, *see* 40 CFR § 86.1803-01—whether the Vehicles complied with

26 federal emissions regulations at the time of sale, and whether, contrary to federal

27 law, the Vehicles' emissions-control systems "significantly reduced the

28 effectiveness of the NOx reduction technology during real-world driving

conditions." (Compl. ¶ 6.)  Each of Plaintiffs' claims necessarily raises these federal questions, which are actually in dispute.

14.     Plaintiffs' claims in this action are based on repeated allegations that Defendants' conduct purportedly violated federal emissions laws and regulations and that Defendants included in the Vehicles illegal "defeat devices," a concept defined exclusively by federal law and regulations.  By way of example:

- "On-road testing has confirmed that the Fraudulent Vehicles produced NOx emissions at an average of 222 mg/mile in city driving *(four times the Federal Test Procedure ("FTP") standard of 50 mg/mile)* and 353 mg/mile in highway driving *(five times higher than the U.S. highway standard of 70 mg/mile)*.  In many instances, NOx values were in excess of 1,600 mg/mile—*more than 20 times governmental standards*."

- "Rather than make the engine *compliant with U.S. emissions standards*, FCA opted to cheat on the emission test."

- "On January 12, 2017, *the EPA issued a NOV to Fiat and FCA for failing to justify or disclose defeat devices* in model year 2014–2016 Ram 1500 EcoDiesel® and 2014–2016 Jeep Grand Cherokee EcoDiesel® vehicles."

- "Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that the defendants had *conspired to install software that would evade emissions regulations*."

- "Plaintiffs had no realistic ability to discover the *presence of the defeat devices*, or to otherwise learn of the fraud, until it *was discovered by the EPA and CARB* and revealed to the public through their respective Notices of Violation."

- "Despite knowing about the Cheat Devices and the *unlawful emissions* during real-world driving conditions, Defendants did not acknowledge the problem, even after the EPA and CARB issued their Notices of Violation."

(Compl. ¶¶ 6, 52, 156, 183, 185, 189 (emphasis added).)

SULLIVAN & CROMWELL LLP

15.     Whether, as Plaintiffs allege, the Vehicles were not "compliant with U.S. emissions standards" raises a question of federal law.  Similarly, the question of whether the Vehicles contained "defeat devices," a term defined exclusively by 40 C.F.R. § 86.1803-01, is also uniquely a question of federal law.

16.     While Plaintiffs attempt to avoid federal question jurisdiction by alleging that the Vehicles "emitt[ed] NOx at levels that are greater than advertised and beyond what a reasonable consumer would expect" (Compl. ¶ 9), they fail to specifically identify any allegedly false representation by Defendants *without reference to federal emissions standards*.  (*See id.* ("All of these representations were material and false because the vehicle contains undisclosed *emission cheating* components." (emphasis added)); ¶ 160 ("The EPA further found that Fiat and FCA did not disclose or justify these control devices in their COC applications, *as required by EPA regulations*." (emphasis added)); ¶ 183 ("[D]efendants had conspired to install software that would *evade emissions regulations*, and . . . were concealing and misrepresenting the true emissions levels of its vehicles." (emphasis added)).)  Thus, by Plaintiffs' own pleading, a court must determine whether Defendants violated federal emissions standards in order for Plaintiffs' claims to be decided.  Accordingly, Plaintiffs' claims necessarily rely on alleged violations of federal law.

17.     The federal questions Plaintiffs raise are also actually disputed. Defendants dispute that any of the Vehicles include "defeat devices" or otherwise violated federal law.[1]  As a result, Plaintiffs' claims necessarily raise actually disputed federal questions, including whether the Vehicles contain a "defeat device" as defined by federal law and whether the Vehicles otherwise comply with federal emissions standards.  Plaintiffs cannot succeed on their causes of action without a resolution of these solely federal issues.

---

[1]     This case is thus significantly different from the *Volkswagen* matter, where the presence of a "defeat device" in the relevant vehicles was not disputed by Volkswagen.

SULLIVAN & CROMWELL LLP

18.     Finally, these substantial and disputed federal questions touch on a distinctly federal interest.  A question is of "interest to the federal system as a whole" where "[d]etermination of the federal issues in this case could heal or injure [a] complex regulatory scheme" that has "the potential to affect many people" subject to its regulations.  *Cty. of Santa Clara* v. *Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1028 (N.D. Cal. 2005); *see also id.* at 1027–28 (focusing on "the importance of the federal issue" (collecting cases)).  Such a "complex federal regulatory scheme"—namely, the EPA's comprehensive regulation of motor-vehicle emissions—is at stake here.  It is not difficult to envision the chaos that could result from different state courts reaching different conclusions about whether the Vehicles contain "defeat devices" or otherwise violated federal law.  And unlike their state-court counterparts, "federal courts are particularly familiar with the federal regulatory scheme" governing environmental compliance.  *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.* v. *Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 863 (E.D. La. 2014).  Thus, there is a strong federal interest—and no countervailing state interest—in having this litigation heard in federal court.

19.     Allowing a federal court to address these federal questions would be consistent with the federal/state balance contemplated by the CAA because the questions "raise significant federal issues."  *Grable*, 545 U.S. at 312.  The "cornerstone" of the CAA is the exclusive power of the federal government to regulate new vehicle engine emissions to prevent "the spectre of an anarchic patchwork of federal and state regulatory programs" governing vehicle emissions.  *Engine Mfrs. Ass'n*, 88 F.3d at 1079 (quoting *Motor & Equip. Mfrs. Ass'n* v. *EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)).  The "clear and undisputed intent of Congress" was to create a uniform federal scheme, thereby "avoiding a chaotic situation from developing where vehicle manufacturers would be subject to 50 different sets of requirements relating to emissions controls."  *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the State*

SULLIVAN & CROMWELL LLP

| | |
|---|---|
| 1 | *of N.Y.*, 709 N.Y.S.2d 1, 9 (N.Y. App. Div. 1st Dep't 2000) (alterations, citations, |
| 2 | and internal quotation marks omitted). Thus, permitting a federal court to determine |
| 3 | whether Defendants violated the federal CAA will not upset the balance between |
| 4 | state and federal courts for the simple reason that a federal court is best positioned |
| 5 | to interpret federal law. |
| 6 |        20.    In sum, Plaintiffs' rights to recovery turn on substantial, disputed |
| 7 | questions of federal law regarding federal emissions standards and the alleged |
| 8 | presence of a federal "defeat device" in the Vehicles. Only by resolving these |
| 9 | questions at the federal level can the congressionally established federal-state |
| 10 | balance be properly maintained. |
| 11 | **NOTICE TO ADVERSE PARTY AND STATE COURT** |
| 12 |        21.    Pursuant to 28 U.S.C. § 1446(d), Defendants are serving written |
| 13 | notification of the removal of this case on Plaintiffs' counsel. |
| 14 |        22.    Pursuant to 28 U.S.C. § 1446(d), Defendants promptly will file a |
| 15 | Notification of Removal, attaching a copy of this Notice of Removal, with the Clerk |
| 16 | of the Superior Court, San Diego County. |
| 17 | **CONSENT OF CO-DEFENDANTS** |
| 18 |        23.    Counsel for Defendants has conferred with the other defendants |
| 19 | that have been served with process, each of which consents to the removal of this |
| 20 | action. |
| 21 | **CONCLUSION** |
| 22 |        Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendants hereby |
| 23 | remove this action from the Superior Court of the State of California, County of San |
| 24 | Diego, to the United States District Court for the Southern District of California. |
| 25 | |
| 26 | Dated: October 15, 2019 |
| 27 |           */s/ Michael H. Steinberg* |
| 28 |           Michael H. Steinberg (SBN 134179)<br>          steinbergm@sullcrom.com<br>          **SULLIVAN & CROMWELL LLP** |

1   1888 Century Park East, Suite 2100
    Los Angeles, California 90067-1725
    Tel.: (310) 712-6600
2   Fax: (310) 712-8800

3   Sverker K. Hogberg (SBN 244640)
    hogbergs@sullcrom.com
4   **SULLIVAN & CROMWELL LLP**
    1870 Embarcadero Road
5   Palo Alto, California 94303
    Tel.: (650) 461-5600
6   Fax: (650) 461-5700

7   *Attorneys for Defendants*
    *FCA US LLC and VM North America,*
8   *Inc.*

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Sullivan & Cromwell LLP, 1888 Century Park East, California 90067.

On October 15, 2019, I served the following document(s):

**NOTICE OF REMOVAL BY DEFENDANTS FCA US LLC AND VM NORTH AMERICA, INC. PURSUANT TO 28 U.S.C. §§ <u>1331, 1441 AND 1446</u>**

on the interested parties in this action by placing a copy thereof enclosed in an envelope addressed as follows:

Charles Miller & Eric Pearson
Heygood Orr & Pearson
6363 North State Highway 161, Suite 450
Irving, TX 75038

Joseph W. Scalia
Law Offices of Joseph W. Scalia
3017 Douglas Blvd., Suite 300, PMB30095
Roseville, California 95661

Ryan Sandrock
Sidley Austin LLP
555 California Street 2000
San Francisco, California 94104

on the interested parties in the subject action by serving a true copy thereof as indicated below:

**[X] BY OVERNIGHT DELIVERY:** I deposited the documents described above in a sealed envelope, with delivery fees paid, designated for overnight delivery to the addressee(s) above. I placed this envelope in a facility regularly maintained by FedEx, an express service carrier.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 15, 2019, at Los Angeles, California.

/s/ Claire Teeter
_____
CLAIRE TEETER